IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON D. BERGIN,  :
:
    Petitioner  :  CIVIL NO. 1:14-CV-01371
:
  vs.  :
:
WARDEN S. SPAULDING,  :  (Judge Rambo)
:
    Respondent  :

**MEMORANDUM**

**Background**

    Jason D. Bergin, while an inmate at the Federal Correctional Institution-Allenwood ("FCI-Allenwood"), White Deer, Pennsylvania, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, in which he named S. Spaulding, Warden of FCI-Allenwood, as the Respondent.[1] Doc. 1, Bergin's Petition. Bergin who is serving a federal sentence of 180 months imprisonment for drug offenses with a projected statutory release date of December 20, 2022,[2] claims that his due process rights were violated during the course of a prison

---

1. Bergin is presently an inmate at the Federal Correctional Complex, Oakdale, Louisiana.

2. Doc. 7-2, Exhibit 1 (Attachment A) to Spaulding's Response to Petition.

disciplinary hearing held on November 14, 2013, at FCI-Allenwood. Id. Bergin was found guilty by a Discipline Hearing Officer (DHO) under prison regulations, of "Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels," Code 305 (a moderate severity level prohibited act), 28 C.F.R. § 541.3 (Table 1 - Prohibited Acts and Available Sanctions) and received sanctions of 15 days disciplinary segregation,[3] loss of 13 days of Good Conduct Time and loss of commissary privileges for 4 months. Id. Bergin has exhausted available administrative remedies. Id. Bergin requests, inter alia, that the court direct that the Bureau of Prisons restore the 13 days of Good Conduct Time. Id. The petition is ripe for disposition and, for the reasons set forth below, the petition will be granted in part and denied in part.

---

3. At the time of the disciplinary hearing Bergin had already served 10 days in segregation.

On November 4, 2013, Bergin was served with Incident Report No. 2512363 charging him as stated above with possessing unauthorized items. The items in question were two court opinions which were obtained via the LexisNexis legal research service provided at the FCI-Allenwood law library.[4]

The incident report was prepared by Correctional Officer C. Stahl on November 4, 2013, and states in toto as follows:

> At approximately 7:00pm on November 4, 2013, while inventorying inmate Bergin's 34765-018 property, I found legal paperwork belonging to Inmate Cruz 70426-056, and inmate Pina-Urena

---

4. The opinions in question (consisting of a total of 9 pages) which are attached to Bergin's petition (Doc. 1, at 14-23) were Pina-Urena v. United States, 2008 U.S.Dist. LEXIS 15422 Feb. 29, 2008) and United States v. Jaimes-Cruz, 2009 U.S.Dist. LEXIS 64900 (July 24, 2009). The opinions are also available on the Westlaw database: Pina-Urena v. U.S., 2008 WL 542597 (S.D.N.Y.Feb. 29, 2008) and United States v. Jaimes-Cruz, 2009 WL 2225065 (E.D.N.C. July 24, 2009). The government does not dispute that these 9 pages were the alleged unauthorized items which Bergin possessed. The opinion in the Cruz case relates to a motion to sever certain counts of a superseding indictment in a criminal case filed in the Eastern District of North Carolina in which Cruz was one of five defendants. The opinion in the Pina-Urena case relates to a petition filed by Pina-Urena under 28 U.S.C. § 2255 in the Southern District of New York.

3

> 17979-069. Inmate Bergin is not authorized to have other inmate's property in his possession. The paperwork was confiscated and sent to the Lieutenant.

Id., at 11 (Attachment). The incident report was delivered to Bergin at 12:30 p.m., on November 5, 2013, by Lieutenant J. Brown. Id.

On November 7, 2013, Bergin appeared before the Unit Discipline Committee ("UDC") at which time Bergin stated that "[the other inmate's] paperwork was in [his] possession because [the other inmate] wanted [him] to look at something." Doc. 7-2, Exhibit 1 (Attachment B) to Spaulding's Response to Petition. Bergin further stated that he "worked in the law library [and the other inmate] left his paperwork there so [he] took it to give it back to him." Id. The UDC based on Bergin's admission found that Bergin committed the prohibited act charged and referred the charge to the DHO with the recommendation that Bergin receive a monetary fine and loss of privileges. Id. The UDC further gave Bergin notice of that decision and advised Bergin of his rights at the DHO hearing, including his rights to be represented by a staff member and present witnesses at

4

the hearing. Id., Attachment C.  Bergin indicated that he wanted a staff member, J. Yearick, to represent him but that he did not wish to present any witnesses. Id.

On November 14, 2013, Bergin appeared for a hearing before the DHO. Id., Attachment D.  At the hearing, it was noted that Bergin initially requested a staff representative but prior to commencement of the hearing Bergin withdrew that request. Id., Attachment C, at 12 & Attachment D, at 14. At the beginning of the hearing Bergin was again advised of his rights, and he indicated he understood them and chose to provide the following statement: "I had another inmate's legal paperwork because he asked me to look at something." Id., Attachment D, at 14.  Bergin presented no witnesses or other documentary evidence. Id. The DHO found that Bergin received at least 24-hour advanced written notice of the charges, had been advised of his rights, and that he had waived his right to a staff representative. Id.

In a decision issued on November 19, 2013, the DHO summarized the evidence he relied on as follows:

> BERGIN's involvement in the incident, as noted in Section 11 of Incident Report 2512363, as provided by C. Stahl, Correctional Officer, was

5

reviewed. Paraphrased, C. Stahl writes: On 11/4/13, at or about 7:00 pm, while inventorying inmate Bergin's # 34765-018 property, I found Legal paperwork belonging to inmate [Cruz 70426-056], and inmate [Pina-Urena 17979-069].[5] Inmate Bergin is [not][6] authorized to have other inmate's property in his possession. The paperwork was confiscated and sent to the Lt.

The DHO believed the information provided by the staff member involved in this case, as they derived no known benefit by providing false information. The DHO finds the charge to be supported in this case based upon the greater weight of evidence cited in this report as well as the inmate's admission.

Upon questioning by the DHO, Inmate BERGIN, Jason, Registration # 34765-018, admitted the charge. He elaborated upon his plea by stating, he had another inmate's legal material. After the consideration of evidence documented above, the DHO has drawn the conclusion the greater weight of the evidence/some facts, listed in the paragraphs above, support(s) the finding, inmate BERGIN . . . committed the prohibited act(s) of Possession of anything not authorized, Code 305, on 11/4/13, at or about 7:00 pm, in Unite 1 A, at FCI Allenwood, PA.

---

5. The names of the inmates and their numbers are found on Bergin's copy of the incident report attached to his petition. The names, however, are blacked-out on the copy of the DHO Report attached to the response to Bergin's petition filed by the government.

6. The DHO erroneously omitted the "not" in his DHO Report.

Id., at 15. The DHO in finding that Bergin violated Code 305 and imposing the sanctions, including the loss of 13 days Good Conduct Time, further stated as follows;

> Bergin's possession of unauthorized items threatened the orderly running of FCI Allenwood. For inmates to retain items not provided them through institutional channels indicates defiance and refusal to follow established and known policy. Limits are placed on inmate property to persuade them not to possess unnecessary or potentially dangerous items. Accordingly, the Disallowance of Good Conduct Time is sanctioned to punish Bergin for his behavior, while the Loss of Privileges (Commissary) and Disciplinary Segregation (Suspend 180 Days pending clear conduct) is sanctioned in an effort to deter him from it in the future. The DHO finds the charge for code 307 (sic)[7] to warrant the Disallowance of Good Conduct Time based on the offense being of a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.

Id. The DHO informed Bergin that he had the right to appeal the decision within twenty (20) days. Id. Bergin received a copy of the decision on November 19, 2013.

---

7. Code 307 is "Refusing to obey and order of any staff member (may be categorized and charged in terms of greater severity, according to the nature of the order being disobeyed, e.g., failure to obey an order which furthers a riot would be charged as 105, Rioting; refusing to obey and order which furthers a fight would be charged as 201, Fighting; refusing to provide a urine sample when ordered as part of a drug-abuse test would be charged as 110)." 28 C.F.R. § 541.3, Prohibited acts and available sanctions (Table 1).

7

Id. After exhausting his administrative remedies Bergin filed the instant petition.[8]

**Discussion**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir.2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell,418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Bergin's sanctions did include the loss of good conduct time, Bergin has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1)

---

8. The government concedes that the exhaustion requirement is satisfied.

the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, et seq., and

9

entitled, <u>Inmate Discipline and Special Housing Units</u>. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. <u>See</u> <u>Von Kahl v. Brennan</u>, 855 F.Supp. 1413, 1418 (M.D.Pa.1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial review pursuant to § 541.7.

The UDC review/hearing is "ordinarily [held] within five work days after [the incident report] is issued" and does not include the initial day staff learns of the incident, weekends or holidays. <u>Id.</u> If the UDC finds that a prisoner has committed a prohibited act, it may impose any of the available sanctions set forth in 28 C.F.R. § 541.3 (Tables 1 and 2) except loss of good conduct time, disciplinary segregation, or monetary fine. <u>Id.</u> If the alleged violation is serious and warrants consideration for more than minor

sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. Id.

A DHO "will only conduct a hearing on the incident report if referred by the UDC." 28 C.F.R. § 541.8. An inmate will receive written notice of the charges 24 hours before the DHO hearing unless the inmate waives the notice requirement in which case the DHO can conduct the hearing sooner. Id. The inmate is permitted to have a staff representative at the hearing and entitled to make a statement and present documentary evidence. Id. After the hearing the DHO will either (1) find the inmate committed the prohibited act or similar one described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review and disposition. Id. If an inmate is found to have committed a prohibited act, the DHO can impose any

of the available sanctions listed in Table 1 and 2[9] of § 541.3. Id. Finally, the written report or decision of the DHO will contain the following:(1) whether the inmate was advised of his or her rights during the proceedings; (2) the evidence relied on by the DHO; (3) the DHO's finding of guilt or innocence; (4) the sanctions imposed; and (5) the reasons for the sanctions imposed. Id.

In the instant case it is clear that Bergin was afforded all of the required procedural rights set forth in Wolff. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and present witnesses on his behalf. Bergin chose only to make a statement, which was documented in the DHO's report. Bergin also

---

9. Table 2 set forth sanctions for repeated prohibited acts within the same severity level. The government has not claimed that Bergin committed prior prohibited acts.

received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision.  Bergin was then notified of his right to appeal.

Since Bergin was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO, both with respect to the finding that Bergin committed the prohibited act and the sanctions imposed.  Before we address this issue we will review the regulations of the Bureau of Prisons relating to the prohibited act and the legal material which an inmate may possess.

Prohibited acts under the regulations of the Bureau of Prisons are divided into four severity categories: Greatest (100 level), High (200 level), Moderate (300 level) and Low (400 level).  28 C.F.R. § 541.3.  The prohibited act alleged to have been committed by Bergin was Code 305, a moderate severity prohibited act. The available punishments for such an act include the following: (1) disallowance of up to 25%

(1-14 days) of good conduct time credit; (2) up to 3 months disciplinary segregation; (3) monetary restitution; (4) monetary fine; (5) loss of privileges, e.g., visiting, telephone or commissary; (6) change of housing; and (7) loss of job. 28 C.F.R. § 541.3 (Table 1).

The Bureau of Prisons has adopted regulations regarding what legal material an inmate can possess and under what circumstances. 28 C.F.R. § 543.11.

Under the regulation the warden of an institution is required to "make materials in the inmate law library available whenever practical, including evening and weekend hours." 28 C.F.R. § 543.11(a).  A warden is to "allow an inmate a reasonable amount of time, ordinarily during the inmate's leisure time . . . to do legal research and to prepare legal documents." Id.  Also, "[w]here practical, the Warden shall allow preparation of documents in living quarters during an inmate's leisure time." Id.

The regulation provides that "[u]nauthorized possession of library materials by an inmate constitutes a prohibited act, generally, warranting disciplinary action[.]" 28 C.F.R. § 543.11(c). An inmate's personal legal material are delineated as, but not limited to, the inmate's pleadings and documents which have been filed in court or with an administrative agency, drafts of pleadings submitted by an inmate in a legal proceedings, and photocopies of legal reference materials. 28 C.F.R. § 543.11(d).

Correctional "[s]taff may allow an inmate to possess those legal materials which are necessary for the inmate's own legal actions" and "the legal materials of another inmate . . . while in the institution's main law library and in another location if the Warden so designates."[10] 28 C.F.R. § 543.11(d)(2) and (f)(2). However, the regulations specifically indicate that "[t]he assisting inmate may not remove another inmate's

---

10. There is no indication that the Warden designated any other location and Bergin has not made such a claim.

15

legal materials, including copies of the legal materials, from the law library or other designated locations" and "[a]lthough the inmate being assisted need not remain present in the law library or other designated location while the assistance is being rendered, that inmate is responsible for providing and retrieving his or her legal materials from the library or other designated locations." 28 C.F.R. § 543.11(f)(2)(I) and (ii).

    The record clearly reveals the existence of evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding that Bergin violated Code 305, albeit a minor, technical violation. In addition to the statement provided by Bergin, the DHO also considered the incident report prepared by the correctional officer. Based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support a finding of guilt and meets the requirements imposed by the Due Process Clause.  However, although

all of the sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541.3 (Table 1), there is no evidence supporting the reasons given by the DHO for imposing the sanction on Bergin of loss of 13 days of Good Conduct Time. The rationale given for sanctioning Bergin 13 days loss of Good Conduct Time was that the prohibited act was of "a highly aggravated offense which greatly jeopardizes the safety of staff and inmates." This rationale is totally unsupported by the evidence. In fact as noted above, a Code 305 prohibited act is considered of moderate severity. Accordingly, Bergin's petition will be granted in part.

An appropriate order will be entered.

s/Sylvia H. Rambo<br>United States District Judge

Dated: August 26, 2015.